## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

---

MICHAEL HOUSTON, ET AL                 CIVIL ACTION NO. 13-2738

VERSUS                                 JUDGE ELIZABETH ERNY FOOTE

VERNETTA QUEEN, ET AL                  MAGISTRATE JUDGE HORNSBY

---

### MEMORANDUM RULING

Before the Court is the Defendant EP Energy E&P Company, L.P.'s Motion To Dismiss for Lack of Subject Matter Jurisdiction under the Rooker-Feldman doctrine. [Record Document 18].[1] Defendant Vernetta Queen is not a party to this motion and has filed her own Motion To Dismiss on different grounds. [Record Document 12]. Because subject matter jurisdiction is a threshold issue as to all Defendants in this case, this ruling applies to the claim against Defendant Queen. Plaintiffs' complaint in this Court calls upon the Court to review and reverse a "Judgment and Judgment of Possession" (hereinafter referred to as a "Judgment of Possession") rendered by the Forty-Second Judicial District Court of Louisiana (hereinafter referred to as the "42nd J.D.C."), a state court.[2] For the following reasons, the Court **GRANTS** the Motion To

---

[1]Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923); D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983).

[2]The 42nd J.D.C. of Louisiana titled its judgment as a "Judgment and Judgment of Possession." [Record Document 8-3].

Dismiss for Lack of Subject Matter Jurisdiction [Record Document 18] and **DISMISSES WITHOUT PREJUDICE** the claims against both Defendants.

I.    **Background**

Plaintiffs Michael Houston and Steve Houston (hereinafter collectively referred to as the "Houston Brothers") filed this complaint seeking declaratory judgment and injunctive relief against EP Energy E&P Company, L.P. ("EP Energy") and Vernetta Queen (hereinafter referred to as "Queen"), the administrator of the Succession of Daisy Cotton. [Record Document 1, p. 3].[3] The complaint pertains to a Judgment of Possession rendered in state court in DeSoto Parish, which placed the Estate of Daisy Cotton in full possession of Mack Houston, Jr.'s undivided one-fourth interest in immovable property in that parish. [Record Documents 1, p. 17; 8-3, p. 2]. While the Defendants in this case are Queen and EP Energy, EP Energy is not a party to the sate court suit but holds an oil, gas, and mineral lease over the property described in the state court Judgment of Possession. [Record Document 8-1, p. 2].

The Houston Brothers have presented this matter to multiple federal and state courts.[4] The 42nd J.D.C. was the most recent court to examine the Houston Brothers'

_____

[3]The Houston Brothers are the grandsons of McKinley Houston and the sons of decedent Mack Houston, Jr., the son of McKinley Houston. [Record Document 1, p. 3]. The complaint alleges McKinley Houston owned a one-fourth interest in immovable property in DeSoto Parish when he died on June 22, 1983. Id. at p. 6. The Houston Brothers contend they are the forced heirs of Mack Houston, Jr. and entitled to the immovable property in DeSoto Parish that Mack Houston, Jr. inherited from McKinley Houston. Id. at p. 7.

[4]In 1997, the Circuit Court of Cook County, Illinois denied the Houston Brothers' petition to contest the will of Mack Houston, Jr. [Record Document 12-3, p. 1]. The

2

claims. Although the Plaintiffs were present at the hearing when the trial date was set, they filed motions to continue and to recuse the 42nd J.D.C.'s only two judges, Judge Adams and Judge Burgess, on the morning of the trial. The Houston Brothers allege the judges had "conspired to defraud them of their constitutional rights of due process." [Record Document 12-5, pp. 2-3]. Judge Adams took the following actions: 1) he denied the Houston Brothers a continuance of the trial date and proceeded with the trial; 2) he denied the motion to recuse Judge Burgess and himself; 3) he commanded the Houston Brothers to appear and show cause why they should not be held in direct and constructive contempt of the court; 4) he found the will of Mack Houston, Jr., an Illinois resident, to be valid under the law of Illinois, where it was "fully litigated," and thus "presented for probate in Louisiana in accordance with the law of Louisiana"; 5) he found Mack Houston, Jr. was in sole possession of any property that McKinley Houston had in Louisiana; 6) he denied the Houston Brothers' claims of forced heirship based on the Louisiana Civil Code articles dealing with conflict of laws, specifically Louisiana Civil

---

First Judicial District Appellate Court of Illinois affirmed the decision. [Record Document 12-4, p. 3]. In 2005, the Houston Brothers filed a complaint against the El Paso Production Co., a previous incarnation of EP Energy, in the United States District Court for the Western District of Louisiana, Shreveport Division, Civil Action No. 05-0033. Judge Tom Stagg dismissed the complaint because the Houston Brothers had not taken the appropriate steps in the succession process necessary to exercise their forced heirship rights. [Record Document 8-1, p. 2]. The 42nd J.D.C.'s Judgment of Possession specifically found the Illinois state court fully addressed a number of issues pertaining to Mack Houston, Jr.'s will, which the Houston Brothers raise here, including but not limited to: the method of its execution; the validity of Mack Houston Jr.'s signature; the validity of the witnesses' signatures; Mack Houston, Jr.'s alleged incapacity to execute the will due to blindness or other physical impairments; and Daisy Cotton's alleged undue influence. [Record Document 8-3, p. 2].

Code Article 3533; 7) he placed the Estate of Daisy Cotton in full possession of the one-fourth property interest located in DeSoto Parish, Louisiana; and 8) he assigned the cost of the proceedings to the Houston Brothers. [Record Document 8-3, pp. 1-2]. When Judge Adams addressed the Houston Brothers' motion to recuse and commanded the Houston Brothers to appear and show cause why they should not be held in direct and constructive contempt of the court, he rejected the Houston Brothers' allegations of fraud as being "totally and completely groundless," while noting the Louisiana Supreme Court and the Second Circuit Court of Appeal of Louisiana had denied the Houston Brothers' writ applications as to these claims. [Record Document 12-5, pp. 4-5]. Judge Adams framed the Houston Brothers' allegations that he, Judge Burgess, Clerk of Court Jeremy Evans, Walter Hunter, and David Butterfield "conspired to defraud them of their constitutional rights of due process" as a "last ditch, desperate attempt to prevent the judicial system of Louisiana from operating." Id. at pp. 3-4.

The Houston Brothers contend the 42nd J.D.C.'s judgment is void, because it lacked subject matter jurisdiction and its judgment is the product of fraud. [Record Document 1, p. 11].[5] According to the Houston Brothers, EP Energy conspired with Queen to "influence" Judge Adams and Judge Burgess to prevent the Houston Brothers

---

[5]Throughout the complaint, the Houston Brothers assert "[t]he request and statements of Judge Adams were bias and prejudice [sic] because the court lacked jurisdiction over the succession proceedings of Illinois Domiciliary Mack Houston." [Record Document 1, p. 62]. As Judge Adams pointed out during the trial, the Houston Brothers repeatedly objected to the state court exercising jurisdiction over immovable property in DeSoto Parish but continuously requested the court to put them in possession of the property. [Record Document 12-5, p. 3].

from inheriting royalties to which they were lawfully entitled. [Record Document 1, pp. 15, 17, 24]. Although the only named Defendants in this federal suit are Queen and EP Energy, the complaint alleges EP Energy's in-house attorney, James Porter, influenced Judge Adams and solicited Walter Hunter, Jr. to file forged documents in the Second Circuit Court of Appeal of Louisiana. [Record Documents 1, pp. 15, 17, 26; 25-1, p. 13]. The 42nd J.D.C. considered the same allegations that officers of the court conspired to defraud the Houston Brothers and found those claims to be "totally and completely groundless." [Record Document 12-5, p. 4].

The Houston Brothers' complaint calls upon this Court to render thirteen declaratory judgments, all of which would require this Court to review and reverse the 42nd J.D.C.'s decision.[6] The complaint also calls upon this Court to enter a preliminary

---

[6]The Houston Brothers request the Court render the following thirteen declaratory judgments: first, the state court was without jurisdiction, because Mack Houston, Jr. owned no immovable or movable property situated in DeSoto Parish, Louisiana, which the complaint contends would void the Judgment of Possession; second, Mack Houston, Jr.'s will is not notarized, which makes it an "absolute nullity" under La. C.C. Art. 1573; third, the full faith and credit clause does not apply to probate judgments of immovable property; fourth, the state court's jurisdiction was based on a fraudulent descriptive list, which, according to the Houston Brothers, voids the entire proceeding; fifth, the state court lacked jurisdiction to hear Daisy Cotton's succession, because she owned no movable or immovable property in DeSoto Parish, Louisiana at the time of her death; sixth, Daisy Cotton's will is absolutely null, because it is not notarized; seventh, Michael and Steve Houston are Mack Houston, Jr.'s forced heirs; eighth, Michael and Steve Houston are entitled to "their forced heir share"; ninth, the state court lacked jurisdiction and was the improper venue to probate Mack Houston, Jr.'s "alleged will"; tenth, Judge Adams was biased and required to recuse himself, which voided the state court decision for lack of subject-matter jurisdiction; eleventh, the state trial court did not have jurisdiction over all proceedings, because the claims of Daisy Cotton had previously been dismissed with prejudice; twelfth, Attorney Walter Hunter, Jr. was "not entitled to the order of January 30, 2008 and that such order is void, and this Fraud [sic] makes void the entire proceedings"; and thirteenth, the state

5

and a permanent injunction enjoining the enforcement of the Judgment of Possession. [Record Document 1, pp. 76-77, 79]. Finally, the Houston Brothers request a judgment forcing the Defendants to pay the costs of litigation and "declaring any further relief that this Honorable Court deems just and equitable." Id. at pp. 76, 79.

EP Energy filed the instant Motion To Dismiss for Lack of Subject Matter Jurisdiction under the Rooker-Feldman Doctrine. [Record Document 18]. Queen also filed a Motion To Dismiss for Lack of Jurisdiction, based on grounds other than the Rooker-Feldman doctrine, and a Motion To Dismiss for Failure To State a Claim. [Record Document 12]. The Houston Brothers filed a Memorandum in Opposition to EP Energy's Motion To Dismiss. [Record Document 25]. EP Energy filed a Reply Memorandum in Support of the Motion To Dismiss for Lack of Subject Matter Jurisdiction. [Record Document 27]. The Houston Brothers then filed a Supplemental Memorandum in Opposition To EP Energy's Motion To Dismiss For Lack of Subject Matter Jurisdiction. [Record Document 34].

## II.   Subject Matter Jurisdiction as the Threshold Issue

The Court must address the Rooker-Feldman doctrine before other issues because it raises a jurisdictional question. See Truong v. Bank of Am., N.A., 717 F.3d 377, 381-82 (5th Cir. 2013). The Court must dismiss an action if it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). This requires the

---

trial court lacked jurisdiction over all proceedings, because Daisy Cotton's claims had previously been dismissed with prejudice. [Record Document 1, pp. 76-79]. The Court notes that the Houston Brothers' "Eleventh Count" and "Thirteenth Count" appear to be identical. Id. at pp. 74, 76.

6

Court to determine whether the <u>Rooker-Feldman</u> doctrine applies to both EP Energy and Queen. The party asserting jurisdiction bears the burden of establishing that the Court has subject matter jurisdiction. <u>See</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994). In determining the existence of subject matter jurisdiction, this Court may rely on the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." <u>Barrera-Montenegro v. United States</u>, 74 F.3d 657, 659 (5th Cir. 1996).

## III.   Law and Analysis

Under the <u>Rooker-Feldman</u> doctrine, a federal district court may not reverse or modify final state court judgments. <u>See</u> <u>Rooker v. Fid. Trust Co.</u>, 263 U.S. 413, 44 S. Ct. 149 (1923); <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S. Ct. 1303 (1983). "The <u>Rooker-Feldman</u> doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court." <u>Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland</u>, 535 U.S. 635, 644 n.3, 122 S. Ct. 1753, 1759 (2002). The doctrine is based on 28 U.S.C. § 1257, which the Supreme Court has held grants it exclusive jurisdiction to hear appeals from final state court judgments. <u>See</u> <u>Lance v. Dennis</u>, 546 U.S. 459, 463, 126 S. Ct. 1198, 1200 (2006).

The <u>Rooker-Feldman</u> doctrine applies exclusively to "cases brought by state-

court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S. Ct. 1517, 1521-22 (2005). The Fifth Circuit has noted that "the Rooker–Feldman doctrine generally applies only where a plaintiff seeks relief that directly attacks the validity of an existing state court judgment." Weaver v. Texas Capital Bank N.A., 660 F.3d 900, 904 (5th Cir. 2011).

A "hallmark" of the Rooker-Feldman doctrine is the "source of the federal plaintiff's alleged injury." Truong, 717 F.3d at 382. The Rooker-Feldman doctrine does not preclude federal jurisdiction "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" Exxon Mobil Corp., 544 U.S. at 293, 125 S. Ct. at 1527 (quoting GASH Assocs. v. Village of Rosemont, Ill., 995 F.2d 726, 728 (7th Cir. 1993)).

The Houston Brothers request the Court to review and reject a Louisiana state court's judgment rendered against them, as well as the Illinois state court judgment recognized by the Louisiana state court. The Louisiana state court judgment was rendered before the Houston Brothers filed this suit. [Record Document 8-3, pp. 1-2]. The Houston Brothers argue their forced heirship and fraud claims are independent claims for purposes of the Rooker-Feldman doctrine. However, the Rooker-Feldman doctrine bars the Houston Brothers' claims because they are complaining of injuries caused by the state court's judgment and seeking relief that directly attacks the state

8

court's judgment. See Morris v. Am. Home Mortgage Servicing, Inc., 443 F. App'x 22, 24 (5th Cir. 2011) (Rooker-Feldman bars a complaint alleging a foreclosure judgment or writ of possession was unlawful when the injuries arose from the state court judgment). However, the Houston Brothers argue their complaint presents claims exempt from the Rooker-Feldman doctrine. This Court will examine each of the claims that the Plaintiffs argue are exempt.

### A.   Forced Heirship

The Houston Brothers contend their forced heirship claims are independent of the Judgment of Possession for purposes of the Rooker-Feldman doctrine because their status as forced heirs is independent of a will and neither brother was present for the "sham trial." [Record Document 25-1, pp. 18-19]. The Houston Brothers rely on Akin v. Louisiana Nat. Bank of Baton Rouge, 322 F.2d 749, 754 (5th Cir. 1963) to argue "the rights of forced heirs exist independently of a will." [Record Documents 25-1, p. 18; 29-1, p. 10]. First, the quoted language from Akin refers to forced heirship in the context of the probate exception, not the Rooker-Feldman doctrine. See Akin, 322 F.2d at 754. Second, while it is correct that under Louisiana law forced heirship rights arise independently of any will, the Houston Brothers' forced heirship claim is not independent of the Judgment of Possession because the 42nd J.D.C. considered the question and held the Houston Brothers are not forced heirs. [Record Document 8-3, p. 2].

### B.   Void Ab Initio Exception

The Houston Brothers contend the void ab initio exception to the <u>Rooker-Feldman</u> doctrine applies here, because the 42nd J.D.C. rendered its decision based on fraud and lacked personal or subject matter jurisdiction. [Record Document 25-1, p. 7]. Under the void ab initio exception, a federal court may review a case entered in a state court if the state court proceedings are a legal nullity and void ab initio. <u>See</u> <u>In re James</u>, 940 F.2d 46, 52 (3d Cir. 1991). The underlying concept is that "[a] state court judgment is subject to collateral attack if the state court lacked jurisdiction over the subject matter or the parties, or the judgment was procured through extrinsic fraud." <u>In re Lake</u>, 202 B.R. 751, 758 (B.A.P. 9th Cir. 1996). Although the Houston Brothers conflate the concepts of subject matter jurisdiction, personal jurisdiction, and fraud by officers of the state court, this Court will address those issues separately.

### 1.    Jurisdiction of the State Court

The initial question before this Court is whether it needs to make an independent assessment of whether the state court had jurisdiction before applying the <u>Rooker-Feldman</u> doctrine. Neither the Fifth Circuit nor the United States Supreme Court has endorsed the ab initio exception as the Houston Brothers articulate it.[7] The Supreme

---

[7]There is a split among the circuit courts regarding whether to recognize the void ab initio exception. <u>See</u> <u>In re Keeler</u>, 273 B.R. 416, 421 (D. Md. 2002) ("There is a split among the circuits as to whether there is a narrow exception to <u>Rooker–Feldman</u> for state judgments that are void <i>ab initio.</i>"); <u>In re James</u>, 940 F.2d at 52 (stating a federal court may review a state court judgment if the state court lacked personal or subject matter jurisdiction); <u>In re Singleton</u>, 230 B.R. 533, 538 (B.A.P. 6th Cir. 1999) (explaining a state court's order is void ab initio and subject to collateral attack if the state court does not have subject matter jurisdiction); <u>In re Lake</u>, 202 B.R. at 758 (explaining a federal court may review a state court judgment if the state court lacked subject matter or personal jurisdiction); <u>Schmitt v. Schmitt</u>, 324 F.3d 484, 487 (7th Cir.

Court has held a state court's judgment regarding its own subject matter jurisdiction and personal jurisdiction generally qualifies for full faith and credit "when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111-12, 84 S. Ct. 242, 245 (1963); Marshall v. Marshall, 547 U.S. 293, 314, 126 S. Ct. 1735, 1750 (2006). However, out of an abundance of caution and because these issues are obvious from the record, this Court will examine whether the state court had subject matter and personal jurisdiction.

As to the subject matter jurisdiction of the state court, the Houston Brothers' allegation lacks merit. The Houston Brothers allege that because neither Mack Houston, Jr. nor Daisy Cotton owned any immovable or movable property in DeSoto Parish, there is no subject matter jurisdiction under Louisiana Code of Civil Procedure Article 2811 and Louisiana Code of Civil Procedure Article 3401. [Record Document 25-1, pp. 8-10].[8]

---

2003) ("acknowledg[ing]" but "not endors[ing]," the void ab initio exception); In re Ferren, 203 F.3d 559 (8th Cir. 2000) (declining to create a void ab initio exception to the Rooker-Feldman doctrine when a state court allegedly interfered with bankruptcy court jurisdiction); Casale v. Tillman, 558 F.3d 1258, 1261 (11th Cir. 2009) (declining to adopt a void ab initio exception based on the state court's lack of jurisdictional authority); In re Thomas, 2006 WL 5217796 at *2 (Bankr. D. Md. Feb. 21, 2006) ("The Fourth Circuit has not addressed a void *ab initio* exception to the Rooker–Feldman doctrine.").

[8]Louisiana Civil Code Article 2811 explicitly permits succession to be opened in the district court of any parish where the non-domiciliary decedent's immovable property is situated. Under Louisiana Civil Code Article 3401, "[w]hen a nonresident dies leaving property situated in this state, a succession proceeding may be instituted in a court of competent jurisdiction in accordance with Article 2811." No explanation is given for how either Article 2811 or Article 3401, which appear on their face to grant jurisdiction, deprived the 42nd J.D.C. of jurisdiction to hear a matter involving immovable property located in DeSoto Parish.

This premise is incorrect. In 2009, Daisy Cotton's daughter-in-law filed a petition to open the Ancillary Succession of Daisy Cotton in DeSoto Parish in order for that court to recognize the decedent's claim to "real property and the resulting mineral interests located in DeSoto Parish as a result of the Will of Mack Houston, Jr." [Record Document 28-2, p. 7]. The Louisiana Civil Code classifies a tract of land as an immovable. La. Civ. Code art. 462. Therefore, there is no doubt that the Louisiana state court had subject matter jurisdiction.

As Judge Adams explained, the Houston Brothers requested the court grant them possession of the immovable property but "repeated[ly] objected to this Courts [sic] exercising jurisdiction over these proceedings which involves [sic] immovable property located in DeSoto Parish" when the "heart of this dispute is the validity of a Will executed in Illinois and its effect on the property in Louisiana." [Record Document 12-5, p. 3]. As Judge Adams put it, the Houston Brothers "asked [him] to exercise [his] jurisdiction in their favor." Id.

As to the state court's exercise of personal jurisdiction over the Houston Brothers, the portions of the state court record that are before this Court reveal that the Houston Brothers at the very least have waived by their appearance in the state court proceedings any objection to a lack of personal jurisdiction. The state court record shows the Houston Brothers requested the state court place them in possession of the immovable property; they disputed the validity of Mack Houston's will; they were "personally present" for the status conference in which the court set a trial date; they filed motions to recuse both judges of DeSoto Parish; and they filed a motion for

12

continuance on the day of trial. Id. at pp. 2-4. The Houston Brothers' engagement with the state court constituted an appearance of record that waived any defect as to personal jurisdiction against them. La. Code Civ. Proc. art. 6A(3) (the exercise of personal jurisdiction requires "(3) The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception."); Poret v. Billy Ray Bedsole Timber Contractor, Inc., 31,531 (La. App. 2 Cir. 1/22/99), 729 So. 2d 632, 633 (filing an answer to plaintiff's petition was an appearance of record); Dazet Mortgage Solutions LLC v. Faia, 12-486 (La. App. 5 Cir. 4/10/13), 116 So. 3d 711, 716 (defendants' answer and subsequent pleadings were appearances of record that waived the jurisdictional defect).

Most importantly, the issue of whether the state court had personal and subject matter jurisdiction was addressed by the state court. The 42nd J.D.C. closely examined this issue and found it had jurisdiction to render judgment in this matter. [Record Document 12-5, p. 3]. This demonstrates the Houston Brothers introduced the same jurisdictional issues to the 42nd J.D.C., which fully litigated and rejected those claims. In summary, it is not necessary for this Court to apply the "ab initio" exception, as the 42nd J.D.C. addressed the issue of jurisdiction and determined that it had such jurisdiction. But, in the event that it is necessary for this Court to apply the "ab initio" exception, this Court holds that the state court did have both personal and subject matter jurisdiction to render its judgment.

      **2.**    **Fraud**

Next, the Court turns to the Houston Brothers' contention that this case falls under the fraud exception to the Rooker-Feldman doctrine. [Record Documents 25-1, pp. 15-18; 29-1, p. 5]. The Houston Brothers rely on Kougasian v. TMSL, Inc., 359 F.3d 1136, 1141 (9th Cir. 2004), a Ninth Circuit case which holds the Rooker-Feldman doctrine "does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that fraud."

In the Fifth Circuit, the relevant inquiry is whether fraud allegations are independent for purposes of the Rooker-Feldman doctrine. See Truong, 717 F.3d at 384 n.3 (explaining "[t]here is, of course, no general rule that *any* claim that relies on a fraud allegation is an 'independent claim' for Rooker–Feldman purposes."). The Houston Brothers' decision to frame their fraud claim as a civil rights action for injuries arising from a state court's judgment does not confer this Court with the jurisdiction necessary to review and invalidate the Judgment of Possession. See Price v. Porter, 351 F. App'x 925, 926-27 (5th Cir. 2009) (Rooker-Feldman bars Due Process and Fourteenth Amendment claims that a state court judge should have recused himself or herself due to a conflict of interest). The Houston Brothers' fraud claims were addressed in the state court. The 42nd J.D.C. considered whether officers of the court were conspiring to defraud the Houston Brothers and found the allegation "totally and completely groundless." [Record Document 12-5, p. 4].[9] The only difference between the fraud

---

[9] The Houston Brothers reason that the Rooker-Feldman doctrine is inapplicable to their fraud claims, because their allegation that EP Energy, through its attorney and

allegations in the federal complaint and those considered by the state court is the Houston Brothers' assertion that EP Energy, colluding with Queen, instigated the conspiracy that the 42nd J.D.C. determined did not exist. [Record Document 1, pp. 15, 17, 42].

Similarly, the Houston Brothers' fraud claims relating to Queen are not independent of the Judgment of Possession. The Houston Brothers contend the Estate of Daisy Cotton, of which Queen is the administrator, made false and misleading statements under oath and had "not filed a valid petition for possession." Id. at pp. 11, 13, 33. This is not an independent claim, because in rendering its judgment, the state court would have determined a valid petition for possession was filed. The Judgment of Possession expressly stated the validity of Mack Houston, Jr.'s will was fully litigated in the Illinois state court system and "presented for probate in Louisiana in accordance with the law of Louisiana." [Record Document 8-3, p. 2]. The Houston Brothers contend Queen conspired with EP Energy and officers of the court, including Charles B. Adams, Judge Robert E. Burgess, Clerk of Court Jeremy Evans, Walter Hunter, Jr., and David Butterfield, to use the Louisiana state court to defraud the Houston Brothers of their rights. Id. at pp. 15, 24. The Houston Brothers have not revealed Queen's specific role in the alleged conspiracy. However, the Houston Brothers do allege the purpose of

---

Walter Hunter, Jr., conspired to control the 42nd J.D.C. is an independent claim. [Record Document 25-1, p. 12]. According to the transcript of the trial, Judge Adams rejected the Houston Brothers' allegations of fraud "as totally and completely groundless" and determined such accusations constituted "direct contempt in order to gain a subversive advantage." [Record Document 12-5, pp. 4-5].

opening the Ancillary Succession of Daisy Cotton was to "facilitate fraud on the court and to conceal the improper conduct and the extortion of the officers of the court namely Charles B. Adams, Judge Robert E. Burgess, Attorney Walter Hunter, Jr., and Attorney David Butterfield." Id. at p. 42. The fraud claim against Queen is not an independent claim for purposes of Rooker-Feldman, because it depends entirely on a conspiracy the state court determined did not exist. Id. at pp. 15, 17, 42.

Furthermore, for purposes of the Rooker-Feldman doctrine, an allegation of fraud must state a claim against the defendants for damages rather than call upon the federal court to review and reverse a state court judgment. See Truong, 717 F.3d at 382-83 (distinguishing between seeking relief based on injuries arising from a state court judgment versus seeking damages for an allegedly illegal act or omission by an adverse party); Morris, 443 F. App'x at 24 (Rooker-Feldman bars an independent unlawful debt collection claim when the losing party only seeks to set aside the state foreclosure judgment and stay the execution of the writ of possession); Turner v. Cade, 354 F. App'x 108, 111 (5th Cir. 2009) (Rooker-Feldman bars a claim against the prevailing party and his attorneys for conspiring and colluding with the trial judge when ruling for the losing party would require the federal district court to overturn a state court's judgment regarding an unexecuted sale of immovable property and divorce proceedings); Magor v. GMAC Mortgage, L.L.C., 456 F. App'x 334, 335-36 (5th Cir. 2011) (Rooker-Feldman bars a claim the parties fraudulently procured a foreclosure judgment because "reversal of the state court's foreclosure judgment would be a necessary part of the relief requested"); Sookma v. Millard, 151 F. App'x 299, 300 (5th

16

Cir. 2005) (Rooker-Feldman bars the losing party's claim that the parties to the state

suit conspired with the judge to deprive her of civil rights when she sought to enjoin

enforcement of the state court divorce decree and damages). Because the Houston

Brothers only seek to set aside the 42nd J.D.C.'s Judgment of Possession, the Rooker-

Feldman doctrine bars the Houston Brothers' fraud claims as to both Defendants.

### C.    Final Judgment

The Houston Brothers contend the Rooker-Feldman doctrine only applies when

state court proceedings are final and that the Judgment of Possession is not final

because the Louisiana Supreme Court has not affirmed it. [Record Document 28-1, pp.

3-5]. Since Exxon Mobil Corp., the federal circuit courts have been split as to whether

all state proceedings, including appeals, must be resolved before the federal suit begins

in order for the Rooker-Feldman doctrine to apply. See Storyville Dist. New Orleans,

LLC v. Canal St. Dev. Corp., 785 F. Supp. 2d 579, 588-89 (E.D. La. 2011). However,

this Court does not have to address the circuit split if the Court finds all state

proceedings were resolved before the instant suit was filed. The Louisiana Supreme

Court has denied the Houston Brothers application for supervisory and remedial writs

three times, once before and twice since the 42nd J.D.C. rendered its Judgment of

Possession. See In re Succession of Houston, 2013-1716 (La. 9/13/13), 120 So. 3d 704;

In re Succession of Houston, 2013-0500 (La. 4/5/13), 110 So. 3d 591; In re Succession

of Houston, 2013-0243 (La. 2/6/13), 107 So. 3d 639. The Houston Brothers filed this

complaint on September 23, 2013, ten days after the Louisiana Supreme Court denied

their last application for supervisory and remedial writs. [Record Document 23, p. 1].
The Louisiana Supreme Court's persistent unwillingness to grant the Houston Brothers'
writ applications, the Houston Brothers' decision to file this action after their third writ
application was rejected, and the absence of any evidence as to what state court
proceedings are ongoing demonstrate the Judgment of Possession is a final judgment
that cannot be appealed to a federal court under the Rooker-Feldman doctrine. See
Brooks v. Flagstar Bank, FSB, 2011 WL 2710026 at *3 (E.D. La. July 12, 2011)
(concluding state court litigation had ended because no evidence existed state
proceedings occurred after the state court's order to issue a writ of seizure and sale;
holding the state court judgment to be a final order that could not be appealed to a
federal district court under the Rooker-Feldman doctrine); Federacion de Maestros de
Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 24 (1st Cir.
2005) (explaining state proceedings end for purposes of the Rooker-Feldman doctrine if
the parties do not seek further action).

    In summary, the Houston Brothers call upon this Court to review and reverse the
Judgment of Possession of the 42nd J.D.C. of Louisiana. The Rooker-Feldman doctrine
applies, and this Court lacks subject matter jurisdiction to review the Houston Brothers'
complaint.

## IV.    Conclusion

    For the foregoing reasons,

**IT IS ORDERED** that EP Energy E&P Company, L.P.'s Motion To Dismiss for Lack of Subject Matter Jurisdiction [Record Document 18] be and is hereby **GRANTED**. All claims against both Defendants are **DISMISSED WITHOUT PREJUDICE**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 25th day of March, 2014.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE